## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HOWARD EMERSON ADAMS** | * | |
| | * | |
| v. | * | **Civil Case No. 14-2434-JFM** |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment, and Mr. Adams's reply memorandum. [ECF Nos. 21, 24, 25]. I find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the defendant's motion be granted, Mr. Adams's motion be denied, and the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Mr. Adams protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 26, 2010. (Tr. 96-97, 166-75). His applications were denied initially on January 31, 2011, and on reconsideration on October 18, 2011. (Tr. 100-04, 110-23). An Administrative Law Judge ("ALJ") held a hearing on March 5, 2013, at which Mr. Adams was represented by counsel. (Tr. 58-95). Following the hearing, the ALJ determined that Mr. Adams was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 37-52). The Appeals Council ("AC") denied Mr. Adams's

request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Adams suffered from the severe impairments of depression and anxiety. (Tr. 42). Despite these impairments, the ALJ determined that Mr. Adams retained the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to simple, unskilled, work that is not at a production pace with only occasional contact with co-workers and general public, which is essentially isolated with only occasional supervision." (Tr. 44-45). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Adams could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 51).

Mr. Adams disagrees. He raises four primary arguments on appeal: (1) that he satisfies the criteria of Listings 12.04 and 12.06; (2) that the ALJ erred in evaluating the medical opinion evidence of record; (3) that the ALJ erred in assessing his credibility; and (4) that the additional evidence he provided to the AC was relevant to the time period at issue. For the reasons set forth below, each argument lacks merit.

## I.    THE ALJ PROVIDED SUBSTANTIAL EVIDENCE IN SUPPORT OF HIS LISTING ANALYSIS

At step three of the sequential evaluation, the ALJ must compare a claimant's impairments with the Listing of Impairments to determine if the claimant's impairments are severe enough to warrant a presumption of disability. *Bryant v. Colvin*, 573 F. App'x 186, 188 (4th Cir. 2014); 20 C.F.R. §§ 404.1520(d) 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. Mr. Adams argues that he satisfies the criteria of Listing 12.04, which pertains to affective disorders, and Listing 12.06, which pertains to anxiety disorders. Pl. Mem. 11-15. In order to meet or

equal Listing 12.04 and Listing 12.06, a claimant must satisfy the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.  The "paragraph B" criteria require the claimant to demonstrate that his impairment results in at least two of the following: (1) marked restrictions of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  *Id.* §§ 12.04(B), 12.06(B).  Mr. Adams contends that he suffers marked difficulties in maintaining social functioning and maintaining concentration, persistence, and pace.  The ALJ reasoned that Mr. Adams suffers from moderate difficulties in maintaining social functioning because he "attends doctors' appointments with no reported problems," and "[d]uring his most recent mental status examinations, [Mr. Adams] made good eye contact, and his speech was normal," as was his effect.  (Tr. 43).  The ALJ also noted that "updated treatment notes indicate that [Mr. Adams] has a new girlfriend."  (Tr. 44).  The ALJ likewise reasoned that Mr. Adams suffers moderate difficulties in maintaining concentration, persistence, and pace because "[t]he medical evidence of record indicates that the claimant's cognition is intact and that his sleeping has improved."  *Id.*

With respect to his difficulties in maintaining social functioning, Mr. Adams contends that the record reflects that he is able to attend doctors' appointments only with assistance from his father, and that the ALJ inappropriately relied on selected normal mental status findings that are inconsistent with the remainder of the record.  Pl. Mem. 14.  However, the ALJ did not state that Mr. Adams drives to doctors in support of her evaluation of Mr. Adams's ability to maintain social functioning.  She simply noted that he is able to attend the appointments "with no reported problems," presumably in reference to the social interaction component of the appointments.  (Tr. 43).  Moreover, the ALJ was well aware of the fact that Mr. Adams's father drives him to

appointments, as evidenced by her statement in the preceding paragraph that Mr. Adams "does not drive, but relies on his father to drive him to the doctor." (Tr. 43). I find that Mr. Adams's capability, from a social standpoint, of attending doctors' appointments, paired with his normal mental status examinations and the fact that he had a new girlfriend, constitutes substantial evidence in support of the ALJ's determination that Mr. Adams suffers from only moderate difficulties in "maintaining social functioning."

With respect to maintaining concentration, persistence, and pace, Mr. Adams asserts that certain record evidence documenting symptoms of his mental impairments supports marked difficulties. Mr. Adams has not, however, identified any evidence undermining the ALJ's rationale supporting her determination that Mr. Adams suffers from moderate difficulties in maintaining concentration, persistence, and pace. Although there may well be evidence supporting marked difficulties, Mr. Adams's argument essentially asks this Court to re-weigh the evidence, a task which it is not permitted to undertake. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). I find that the ALJ provided substantial evidence in support of her evaluation of Mr. Adams's ability to maintain concentration, persistence, and pace.

Mr. Adams finally claims that the ALJ did not discuss any medical opinions supporting her determination that Mr. Adams suffers from moderate, rather than marked, restrictions in social functioning and concentration, persistence, and pace. Pl. Mem. 13. He argues that the opinions of Dr. Savoie and Dr. O'Donnell establish the presence of marked difficulty in social functioning and concentration, persistence, and pace. However, his argument ignores the fact

that, as discussed below, the ALJ properly discredited the opinions of Dr. Savoie and Dr. O'Donnell. Accordingly, she did not err by declining to discuss those physicians' opinions in determining whether Mr. Adams met or equaled a listing.

## II.     THE ALJ ADEQUATELY ASSESSED THE MEDICAL OPINION EVIDENCE

After determining that Mr. Adams's impairments did not meet or equal a listing, the ALJ went on to assess Mr. Adams's RFC. As a component of her RFC assessment, the ALJ discussed all of the medical opinion evidence in the record. Mr. Adams argues that the ALJ erred by assigning "little weight" to the opinions of his treating physician, Dr. Savoie, and an examining physician, Dr. O'Donnell. Mr. Adams further claims that the ALJ erred by instead assigning "great weight" to the opinion of a State agency psychological consultant.

The Fourth Circuit set forth parameters for evaluating medical opinions of treating physicians in *Craig*, 76 F.3d at 590, which were later refined by amendments to 20 C.F.R. §§ 404.1527 and 416.927. *See Pitman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). When a medical opinion is from a "treating source," it is given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating source's medical opinion is not assigned controlling weight, however, in determining the weight to give the opinion, the ALJ should consider: (1) the length of the treatment relationship and its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Those same factors are relevant to the evaluation of medical opinions from all other medical sources, including examining and non-examining physicians. 20 C.F.R. §§ 404.1527(e), 416.927(e).

In this case, the ALJ stated that she did not assign Dr. Savoie's opinion "controlling weight or even great weight because it is inconsistent with contemporaneous treatment notes, as well as inherently inconsistent." (Tr. 49). She then cited specific examples including "intermittent office visits and GAF scores indicative of moderate symptoms," as well as "some indication that [Mr. Adams] has improved when he is consistently taking his medications." *Id.* The ALJ also noted that Dr. Savoie had only seen Mr. Adams on one occasion prior to issuing his opinion. *Id.* Finally, the ALJ explained that Mr. Adams's inconsistent treatment and the fact that he "only presented for a few office visits, with gaps in between treatment," were inconsistent with the marked limitations expressed in Dr. Savoie's opinion. The ALJ expressly acknowledged the "symptoms" cited by Mr. Adams in support of his argument, and although they may indeed support Dr. Savoie's opinion, it is not the function of this Court to re-weigh the evidence or to substitute its judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Moreover, although it is well settled that GAF scores are not determinative of disability, nothing prohibits an ALJ from considering them as one component of a full analysis of the record evidence. *See, e.g., Davis v. Astrue*, Case No. JKS–09–2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010); *Kozel v. Astrue*, No. JKS–10–2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012). Indeed, in concluding her RFC assessment, the ALJ noted that she only assigned the GAF scores in the record "some weight." (Tr. 50). Each of the considerations the ALJ noted is pertinent in evaluating physicians' opinions under the Social Security regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c). Taken together, I find that the ALJ's rationale provides substantial evidence for her assignment of "little weight" to Dr. Savoie's opinion.

The ALJ likewise determined that the opinion of Dr. O'Donnell, a treating, non-examining physician, was entitled to "little weight." (Tr. 50). In support of her assignment, the ALJ explained that Dr. O'Donnell's opinion was "inconsistent with the treatment records since the opinion." Specifically, the ALJ noted that treatment notes from three months later described Mr. Adams as "somewhat depressed" and moderately anxious, which she found inconsistent with the severe limitations opined by Dr. O'Donnell. *Id.* (citing Tr. 306). Finally, the ALJ deemed Dr. O'Donnell's statements concerning Mr. Adams's inability to work vague and conclusory, and noted that opinions on such issues are reserved to the Commissioner. *Id.* Mr. Adams argues that the ALJ's explanation mischaracterizes the record. He also maintains that it was improper for the ALJ to consider that Dr. O'Donnell's opinion that Mr. Adams was unable to work was on an issue reserved to the Commissioner. The explanation provided by the ALJ is supported by the record evidence, and although there is also certain record evidence supporting Mr. Adams's claims, as noted above, I am not permitted to re-weigh the evidence. Moreover, the fact that portions of Dr. O'Donnell's opinion were on an issue reserved to the Commissioner was indeed relevant pursuant to Social Security regulations, as such opinions are not afforded the special significance accorded medical opinions. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Finally, the ALJ assigned "great weight" to the opinion of State agency psychologist Dr. Payne. Notably, State agency consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Although Mr. Adams is correct that an assignment of great weight to the opinion of a State agency consultant, standing alone – that is, without any supporting explanation – cannot constitute substantial evidence, this case simply does not involve such a bare assessment. Pl. Mem. 17 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th

Cir. 2014)).   The ALJ reasoned that Dr. Payne's opinion was "consistent with the contemporaneous treatment notes documenting intermittent symptoms that improve with consistent medications."   (Tr. 48-49).   The ALJ explained that the limitation in her RFC assessment to "simple work in a relatively isolated work setting"  was sufficient to accommodate the symptoms of Mr. Adams's mental impairments.   Moreover, although Dr. Payne only had the benefit of reviewing the record up to January 28, 2011, the ALJ had the benefit of reviewing the record in its entirety and was capable of determining whether Dr. Payne's opinion was consistent with the subsequent evidence.

### III.   THE ALJ'S ASSESSMENT OF MR. ADAMS'S CREDIBILITY WAS SUPPORTED WITH SUBSTANTIAL EVIDENCE

As a component of her RFC assessment, the ALJ also assessed the credibility of Mr. Adams's subjective complaints.   The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints.   *Craig*, 76 F.3d at 594.   First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant.   *Id.*   After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work."   *Id.* at 595.   In this case, the ALJ determined that although Mr. Adams's impairments were reasonably likely to cause his alleged symptoms, his subjective complaints were not entirely credible.[1]   The ALJ explained that the medical record was "replete with inconsistencies in comparison to [Mr. Adams's] testimony and documents a history of treatment inconsistency."   (Tr. 46).   As an example, the ALJ cited the apparent inconsistency between Dr.

---

[1] The statement made by the ALJ in discrediting Mr. Adams's credibility is similar to the problematic boilerplate language that the Fourth Circuit recently determined warranted remand in *Mascio v. Colvin*, No. 13-2088, 2015 WL 1219530, at *5 (4th Cir. Mar. 18, 2015).  It is, however, critically distinguishable from that boilerplate because it does not reference the ALJ's RFC assessment, and thus does not imply that the ALJ first assessed Mr. Adams's RFC and then used that assessment to determine his credibility.  *See id.*  Moreover, the ALJ cured any issue created by her use of boilerplate credibility language by thereafter properly and thoroughly analyzing Mr. Adams's credibility, as discussed below.

O'Donnell's consultative examination of Mr. Adams and an initial psychiatry evaluation from three months later, as well as other treatment notes documenting a "relaxed and less defensive" demeanor. *Id.* The ALJ also emphasized Mr. Adams's inconsistent behavior in both seeking treatment and complying with treatment recommendations. (Tr. 47, 48). The ALJ cited Mr. Adams's most recent treatment notes reflecting that he reported sleeping every night, which is inconsistent with his hearing testimony. (Tr. 48). The ALJ noted the inconsistency between Mr. Adams's testimony regarding why he is incapable of working and his previous statement to his social worker indicating reluctance to accept a minimum wage job in light of his previous salary. *Id.* Most importantly, the ALJ emphasized the instances in the record of Mr. Adams informing physicians that he was not being truthful, and examples of physicians describing Mr. Adams's "reliability and validity" as "exaggerated" and his over-reporting of symptoms. (Tr. 47 (citing Tr. 691, 708, 743, 745)). Contrary to Mr. Adams's argument, the ALJ did not "pick and choose" evidence that was harmful to Mr. Adams. Rather, she noted that the evidence she cited was inconsistent with Mr. Adams's statements concerning the intensity, persistence, and limiting effects of his symptoms. Although other evidence may have supported Mr. Adams's subjective statements, the abundance of inconsistent evidence is indeed damaging to his credibility. The ALJ accurately summarized the record and provided substantial evidence in support of her credibility assessment.

IV.   **THE ADDITIONAL EVIDENCE SUBMITTED TO THE APPEALS COUNCIL WAS NOT RELEVANT TO THE TIME PERIOD AT ISSUE**

After the ALJ issued her decision, Mr. Adams requested that the AC review her determination. With his request, Mr. Adams submitted evidence that he claimed constituted "new and material evidence." He now maintains that the AC erred in determining that the evidence was "about a later time," and that it therefore did "not affect the decision about whether

[he was] disabled beginning on or before [the date of the ALJ's decision]." Pl. Mem. 26; (Tr. 2). The evidence Mr. Adams submitted includes an opinion from Dr. Sherman stating that Mr. Adams has been "totally disabled emotionally and unable to function in any job in any capacity . . . since [January 1, 2007]." (Tr. 18). Mr. Adams contends that Dr. Sherman's opinion was thus "retrospective in nature," citing *Wilkins v. Secretary of Department of Health and Human Services*, 953 F.3d 93, 96 (4th Cir. 1991). In *Wilkins*, the Court stated that a "treating physician may properly offer a retrospective opinion on the past extent of an impairment." *Id.* However, *Wilkins* involved a physician who had treated the claimant before and during the relevant time period, which renders it critically distinguishable from the factual situation in this case, namely that Dr. Sherman did not begin treating Mr. Adams until eight months after the end of the relevant time period. (Tr. 8). Moreover, the date that Dr. Sherman issued his opinion was also the first date Dr. Sherman ever treated Mr. Adams, which calls into question whether, at the time the opinion was issued, Dr. Sherman even constituted a "treating physician." *Wilkins* is thus inapposite to this case. Dr. Sherman provided no support for his contention that Mr. Adams had been totally disabled since 2007, and aside from Mr. Adams's own subjective complaints, I can glean from the opinion no basis for his assertion. I therefore find that the AC did not err in determining that Dr. Sherman's opinion and treatment notes are not relevant to the time period at issue in this case.

## V.   CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 24];

2. the Court DENY Mr. Adams's Motion for Judgment on the Pleadings [ECF No. 21];

3. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

## VI.    NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report, and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  April 16, 2015                              _____/s/_____
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge